## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMIE PETITT, | |
| Plaintiff, | |
| v. | Case No. 17-CV-2366-JAR |
| BRONSON CAMPBELL, et al, | |
| Defendants. | |

## MEMORANDUM & ORDER

Plaintiff Jamie Petitt brings claims against Defendants Bronson Campbell, Charles Stutesman, Andy Dinger, Tony Trower, Betsy Doughramaji, Lucy Thomas, Mike Hahn, and City of Valley Falls, Kansas pursuant to 42 U.S.C. § 1983, alleging illegal and wrongful arrest without probable cause and malicious prosecution in violation of her First and Fourth Amendment rights.  This Court dismissed Defendants Stutesman, Dinger, Trower, Doughramaji, Thomas, and Hahn on October 5, 2017.[1]  Before the Court are the remaining Defendants' Motion for Summary Judgment (Doc. 60), and Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment Out of Time (Doc. 66).  For the reasons set forth in detail below, Defendants' motion is **granted** and Plaintiff's motion is **denied**.

## I.    Plaintiff's Motion for Extension of Time

On May 7, 2018, Defendants filed a Motion for Summary Judgment.[2]  Plaintiff filed an Unopposed Motion for Extension of Time to File Response to the Motion for Summary Judgment on May 29, 2018, and this Court granted an extension until July 2.[3]  On August 6,

---

[1] Doc. 21.

[2] Doc. 60.

[3] Docs. 64, 65.

Plaintiff filed a second motion for extension of time and on August 7, Defendants filed a response opposing Plaintiff's motion.[4]  On August 20, before the Court ruled on Plaintiff's August 6 motion, Plaintiff filed a response to the motion for summary judgment.[5]

D. Kan. Rule 7.4(b) provides that "[a]bsent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum."  Similarly, Fed. R. Civ. P. 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect."[6]  Under both the local and federal rules, Plaintiff must establish excusable neglect before being granted leave to respond out of time.

The relevant factors in considering whether a party seeking leave to respond out of time has established excusable neglect are:

> "(1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for the delay and whether it was in the reasonable control of the moving party, and (4) the existence of good faith on the part of the moving party."[7]

"While excusable neglect is a 'somewhat elastic concept,' 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'  'Control

---

[4] Docs. 66, 67.

[5] Doc. 68.

[6] Although Plaintiff styled her motion as a request for extension of time, the Court must construe it as a request to file out of time since it was filed after the July 2, 2018 response deadline.

[7] *Scott v. Power Plant Maint. Specialists, Inc.*, No. 09-CV-2591-KHV, 2010 WL 1881058, at *2 (D. Kan. May 10, 2010) (citing *Hamilton v. Water Whole Int'l. Corp.*, 302 F. App'x 789, 798 (10th Cir. 2008)).

over the circumstances of the delay is a very important factor—perhaps the most important single factor in determining whether neglect is excusable.'"[8]

Regarding the first two factors, the Court finds the opposing party is prejudiced by the delay, and the length of delay impacts judicial proceedings. Plaintiff filed her response nearly seven weeks after the deadline, requiring Defendants to devote time to filing a reply. A delay in filing a response to summary judgment has consequences far greater than a delay in filing an answer to a complaint; it is not "relatively innocuous."[9] Plaintiff's delay attenuates the preparation time of both parties for trial, as well as the court's time to prepare a memorandum and order to facilitate the parties' preparation.

The third factor, the reason for the delay and whether it was within Plaintiff's control, is perhaps the most important factor.[10] In her August 6 motion for extension of time, Plaintiff offers, without further elaboration, "counsel's health is improving" as support for her motion.[11] The Court received no prior notice of any issue with Plaintiff's counsel's health. Plaintiff also mistakenly cites August 6, 2018 as the expiration of the first extension, when the correct response deadline was July 2, 2018.[12] Plaintiff offers no explanation for why the motion for an extension of time based on counsel's health was not filed on or before July 2, or in the 34 days prior to August 6.

---

[8] *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 09-2517-DJW, 2011 WL 1344146, at *1 (D. Kan. Apr. 8, 2011) (quoting *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662-JAR-DJW, 2011 WL 939182, at *2 (D. Kan. Feb. 25, 2011)).

[9] *See Lewis v. Sprint Nextel*, 08-2458-JAR, 2008 WL 5263782, at *2 (D. Kan., Dec. 5, 2008) (finding a delay of approximately one month between the original deadline and the motion for leave to file an answer out of time was not prejudicial; *Welch v. Centex Home Equity Co., LLC*, 03-2132-JWL-DJW, 2004 WL 2348295, at *1 (D. Kan. Apr. 23, 2004) (finding a delay of two months in filing an answer is "relatively innocuous.").

[10] *United States v. Torres*, 372 F.3d 1159, 1161 (10th Cir. 2004).

[11] Doc. 66.

[12] *See id.*

This is not the first instance in which Plaintiff has failed to meet Court deadlines. In the Scheduling Order, Magistrate Judge Kenneth G. Gale set a discovery deadline for April 2, 2018.[13] On April 1, Plaintiff moved to extend that deadline by thirty days, claiming that "counsel was under the mistaken impression that the discovery deadline was April 30, 2018."[14] Further, this Court granted a Partial Motion to Dismiss filed by Defendants, because "Plaintiff failed to respond to the motions and the time to do so [expired]."[15]

Based on Plaintiff's pattern of failing to comply with Court-ordered deadlines, and failure to cite any substantive reason supporting the motion to file her response out of time, the Court finds that Plaintiff's reason for the delay weighs strongly in favor of denying the motion.

Finally, the Court considers whether Plaintiff has acted in good faith. As discussed above, in her August 6 motion, Plaintiff incorrectly supplied the date of August 6, 2018 as the operative deadline for Plaintiff's summary judgment response.[16] Further, Plaintiff filed her response out of time on August 20, without prior leave of court.[17] These actions, when coupled with Plaintiff's pattern of dilatory filings, suggest a failure to act in good faith regarding the deadlines imposed by this Court.

Having examined the requisite factors, the Court finds that Plaintiff has failed to establish excusable neglect for her failure to timely respond to Defendants' summary judgment motion. Plaintiff's motion for extension of time is therefore **denied**, and Plaintiff's response, filed on August 20, 2018, is hereby stricken from the record, and the assertions contained therein are not

---

[13] Doc. 24.

[14] Doc. 55.

[15] Doc. 21.

[16] Doc. 66.

[17] Doc. 68.

considered in this order.  The Court proceeds to decide Defendants' summary judgment motion as uncontested.

## II.     Defendants' Motion for Summary Judgment

### A.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[18] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[19]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[20]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[21]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[22]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[23]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's

---

[18] Fed. R. Civ. P. 56(a).

[19] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

[20] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[21] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[22] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[23] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[24]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[25] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[26] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[27] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[28] To successfully oppose summary judgment, the nonmovant must bring forward "more than a mere scintilla of evidence" in support of his position.[29] A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[30] Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[31]

### B.  Uncontroverted Facts

Under D. Kan. Rule 7.4,

---

[24] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[25] *Anderson,* 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[26] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[27] *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[28] *Adler*, 144 F.3d at 671.

[29] *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

[30] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[31] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> Absent a showing of excusable neglect, a party or attorney who
> fails to file a responsive brief or memorandum within the time
> specified in D. Kan. Rule 6.1(d) waives the right to later file such
> brief or memorandum. If a responsive brief or memorandum is not
> filed within the Rule 6.1(d) time requirements, the court will
> consider and decide the motion as an uncontested motion.
> Ordinarily, the court will grant the motion without further notice.

As a result of Plaintiff's failure to establish excusable neglect—and, therefore, inability to oppose Defendants' motion for summary judgment out of time—the Court may grant the motion as uncontested under D. Kan. R. 7.4."[32] This standard is modified in the context of a motion for summary judgment: "It is improper to grant a motion for summary judgment simply because it is unopposed."[33] Under Fed. R. Civ. P. 56(e)(2), the Court may deem a fact undisputed where the nonmoving party fails to address it.[34] The rule also permits the Court to grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[35] As a result of Plaintiff's failure to respond by July 2, 2018, and subsequent inexcusable delay in seeking to respond out of time, the Court deems Defendants facts undisputed to the extent they are supported by the record.

Plaintiff Jamie Petitt is a resident of the City of Valley Falls, Kansas ("the City"). Defendant Bronson Campbell is, and at all relevant times to Plaintiff's allegations was, the duly appointed and acting Chief of Police of the City of Valley Falls Police Department. Defendant City of Valley Falls is a municipality organized under the laws of the State of Kansas.

---

[32] *Id.*

[33] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *EEOC v. Lady Balt. Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986)).

[34] Fed. R. Civ. P. 56(e)(2).

[35] Fed. R. Civ. P. 56(e)(3).

### 1. Facts Giving Rise to October 2015 Charges

On September 4, 2015, Chief Campbell met with Clifford Coleman and his daughter Brylee Coleman. The Colemans wished to file a harassment report against Plaintiff. Ms. Coleman had recently broken up with Plaintiff's son, Trey, and after the break-up, she began receiving private Facebook messages from Plaintiff. The messages, sent on September 3 and 4, 2015, include comments such as "How dare you screw someone else," "Tata loosey," "He's way too good for you," "They all call you Brylee whore," "by the way the whole town knows exactly how you got the poison ivy all over yourself and your vag cause everybody's talking about it and think you're a joke," and "our whole family will haunt you."[36] The Colemans provided Chief Campbell with printed copies of the communications from Plaintiff.

Chief Campbell asked the Colemans if they had asked Plaintiff to stop messaging Brylee. They said they had not and were requesting that the police do so. Chief Campbell directed Officer Reynolds to speak to Plaintiff and ask her to stop sending messages. In Officer Reynolds' conversation with Plaintiff, Plaintiff admitted sending the messages to Coleman and agreed to stop. She also told Officer Reynolds about a prior charge of harassment by telecommunications device, that the conviction was about money, and that she did not trust the Valley Falls Police Department.

On September 8, 2015, Chief Campbell was parked in his patrol car on K16 highway in the school zone when Plaintiff's husband, Danny Wilson, approached and handed him a written statement from Plaintiff regarding her communications with the Colemans. A portion of this conversation was captured on Chief Campbell's body camera.

---

[36] Doc. 62-4.

When Chief Campbell initially reviewed the Kansas statutes (K.S.A. §§ 21-5427 and 21-6206) regarding stalking and harassment by telecommunication device, he was unsure whether a crime had or had not been committed. In his Affidavit, he states, "I advised Officer Reynolds that I did not think the elements of the crime had been met at the time of the report."[37]

On September 10, 2015, Chief Campbell drafted a Probable Cause Affidavit, utilizing the facts provided to him by the Colemans and based on his conversation with Wilson. Although Plaintiff alleges that Chief Campbell's Affidavit contains false information, Plaintiff admitted sending the messages through her cell phone and Facebook Messenger, that she was asked by Officer Reynolds to stop sending messages, that Wilson told Chief Campbell that "[Plaintiff] would likely post about Brylee on Facebook but would stop sending her direct messages,"[38] and that Plaintiff directed Wilson to give her written statement to Chief Campbell.

The Campbell Affidavit further states "[Danny Wilson] also stated his wife has been charged with harassment by telecom in the past under similar circumstances. He to [sic] me the charges were dropped and they blamed Police corruption."[39] Plaintiff initially claimed that the first sentence of that statement was false, but later admitted that she was charged with and pled guilty to "harassment by telecom," and the transcript of Chief Campbell's body camera shows that Wilson first raised the issue of police corruption to Officer Campbell.

> Q: No, I – I don't think that – that anybody's done anything malicious or anything or – and honestly, I don't think anybody's done anything criminal yet, you know.
> A: Hopefully nobody does because we don't need no trouble.
> Q: No.
> A: And like I told my wife, you know, and the thing you might see on there – I could have sworn she said something, well, you know, she's been in trouble before over something when another cop

---

[37] Doc. 62-2.

[38] Docs. 62-2, 62-5.

[39] *Id.*

worked here and he was kind of a dirty little cop, the whole town
didn't really like him but it's whatever.
Q: Uh-huh.
A: You know, and she got herself in trouble, in a pickle before
(inaudible).
Q: I see.
A: A phone thing. So anyways, I think she said she would – the
only thing you might see on a (inaudible) is that she might have
said that she will fight the police department.[40]

On October 1, 2015, Bethany Lee, then Assistant County Attorney for Jefferson County,

filed a criminal complaint against Plaintiff in the District Court of Jefferson County, Kansas,

asserting a violation of K.S.A. § 21-2606(a)(1)(C) & (b): Harassment by Telecommunication

Device. On November 9, 2015, the Clerk of the District Court of Jefferson County issued a

summons, directing Plaintiff to appear in person on November 9, 2015. A district court judge

issued an arrest warrant for Plaintiff, and she was arrested by a Jefferson County Deputy on

February 3, 2016. She was taken to the Jefferson County Correction's Facility and bonded out

after approximately an hour and a half.

On August 31, 2016, Plaintiff's criminal defense attorney filed a motion to dismiss the

criminal charges against her. Oral arguments were held before Jefferson County District Court

Judge Gary Nafziger on October 7, 2016, after which the court found that "no specific threat was

made," the statements were made on a "public forum," that it was "not abusive or harassive,"

and "[t]here was no repeated contact."[41] As acknowledged by Plaintiff, the district judge did not

know what Facebook was, and he incorrectly indicated that it was a one-time communication

because there were two communications made by Plaintiff. The trial judge also relied on

Plaintiff's defense attorney's incorrect statements that Plaintiff's use of Facebook, rather than

---

[40] Trans. of Body Camera Video, Doc. 62-5 at 22:9–23:5 (emphasis added).

[41] Trans. of Motion to Dismiss, Doc. 62-12 at 44:1-22.

Facebook Messenger, was no different than Plaintiff standing in public making the comments to Coleman.

### 2.    Facts Giving Rise to January 2017 Charges

On November 4, 2016, the City received a letter self-described as a formal complaint from Plaintiff against Chief Campbell.  The letter claimed that Chief Campbell made the following false statements: (1) Plaintiff told Officer Reynolds that her previous charge for harassment by telecommunication device was because of police corruption, (2) Plaintiff's husband alleged police misconduct and corruption when he spoke with Officer Campbell, and (3) Plaintiff's husband told Officer Campbell that Plaintiff planned to continue to discuss the victim on Facebook.  On January 4, 2017, the City's Governing Body considered Plaintiff's complaint in Executive Session and reviewed the body camera video concerning the interaction between Chief Campbell and Wilson. The Governing Body unanimously voted that the complaint was unwarranted and to send the complaint to the County Attorney for possible prosecution under K.S.A. § 21-5904, Interference with Law Enforcement.  On January 5, 2017, Mayor Stutesman wrote Plaintiff, informing her of the Governing Body's decision.

On January 6, 2017, County Attorney Jason Belveal filed a criminal complaint against Plaintiff in the District Court of Jefferson County, alleging a violation of K.S.A. § 21-5904(a)(1)(B) & (b)(1)(A), Interference with Law Enforcement.  An arrest warrant was executed by Jefferson County District Court on January 17, 2017, when Plaintiff turned herself into jail. On February 27, 2017, newly elected County Attorney Joshua Ney filed the State's motion to dismiss without prejudice the criminal charges against Plaintiff, which was granted by Judge Reiling that same day.

## C.       Discussion

### 1.       Chief Campbell

Defendants move for summary judgment on the individual capacity claims against Chief Campbell on the basis of qualified immunity.  Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."[42]  Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[43]

As the Tenth Circuit explained in *Rojas v. Anderson*, "because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the qualified immunity defense triggers a modified summary judgment standard.[44]  The initial burden rests on the plaintiff, rather than the defendant; and the plaintiff must first "clear two hurdles:" (1) demonstrate that the defendant violated his constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[45]  The court may decide the appropriate order to consider these issues.[46]  Only if the plaintiff clears these hurdles does the burden shift back to the movant defendant to make the traditional showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.[47]  In determining whether the plaintiff has

---

[42] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[43] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

[44] 727 F.3d 1003 (10th Cir. 2013).

[45] *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015).

[46] *Camreta v. Greene*, 563 U.S. 692, 722 (2011).

[47] *Rojas*, 727 F.3d at 1003–04.

demonstrated a violation of her constitutional or statutory rights and that the right was clearly established at the time, the court must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[48]

Section 1983 provides a cause of action for the deprivation of federal rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ."[49]  Plaintiff argues that Officer Campbell violated her constitutional rights in two ways: (1) by causing her to be falsely arrested in violation of the Fourth Amendment on February 3, 2015 and (2) by causing her to face malicious prosecution in violation of the Fourth Amendment in October 2015.  Plaintiff has not presented evidence that a constitutional violation occurred; therefore, qualified immunity applies.  Accordingly, the Court need not address the clearly established law prong of the qualified immunity inquiry.

### a.    False Arrest

Under § 1983, an arrestee can assert a claim for false arrest by pleading the common law elements of the claim.[50]  Under Kansas Law:

> One seeking to recover for false arrest or false imprisonment must prove that he was unlawfully caused to be arrested by the defendants, and, though it is not necessary that the arrest was directly ordered by the defendants, it must appear that they either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged it.[51]

---

[48] *Scott v. Harris*, 550 U.S. 372, 376–80 (2007).

[49] 42 U.S.C. § 1983.

[50] *Turner v. Delaney*, No. 10-2533-JWL, 2015 WL 4066637 (D. Kan. July 2, 2015) (citing *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir.1996)).

[51] *Thompson v. Gen. Fin. Co.*, 468 P.2d 269, 280 (Kan. 1970).

An unlawful arrest occurs when there is no probable cause to support the arrest.[52] "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."[53] Probable cause does not demand that there be knowledge or facts sufficient for a finding of guilt, but it requires "more than mere suspicion."[54]

K.S.A. § 21-6206(a)(1)(C) states:

> (a) Harassment by telecommunications device is the use of: (1) A telecommunications device to:
>  . . . .
> (C) Make or transmit any comment, request, suggestion, proposal, image or text with intent to abuse, threaten or harass any person at the receiving end.
>  . . . .
> (d) As used in this section, "telecommunications device" includes telephones, cellular telephones, telefacsimile machines, and any other electronic device which makes use of an electronic communication service . . . .

Here, Chief Campbell received written complaints from Brylee Coleman which alleged that Plaintiff used Facebook Messenger on two separate occasions to harass Coleman because she had broken up with Plaintiff's son. The Colemans provided Chief Campbell with copies of the messages, which included comments such as "How dare you screw someone else," "Tata loosey," "He's way too good for you," "They all call you Brylee whore," "by the way the whole town knows exactly how you got the poison ivy all over yourself and your vag cause everybody's talking about it and think you're a joke," and "our whole family will haunt you."[55]

---

[52] *Id.*

[53] *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002).

[54] *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).

[55] Doc. 62-4.

When Officer Reynolds spoke with Plaintiff regarding the messages, she admitted sending them through Facebook Messenger.

Plaintiff's comments could reasonably be construed as abusive, threatening, or harassing, in violation of the statute. There was nothing to indicate that the Colemans' statements were untrustworthy, and Officer Reynolds' conversation with Plaintiff confirmed that she sent Ms. Coleman Facebook messages. Plaintiff further confirmed that she used Facebook Messenger, an electronic communication service, to send Ms. Coleman the messages. Given the undisputed facts, Officer Campbell had probable cause to suspect Plaintiff violated K.S.A. § 21-6206(a)(1)(C).[56] Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of false arrest by Chief Campbell.

### b. Malicious Prosecution

Under § 1983, an arrestee can assert a claim for malicious prosecution based on a violation of the Fourth Amendment.[57] Plaintiff must allege facts with record support to demonstrate the following elements of this claim:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.[58]

---

[56] The Court acknowledges that in Chief Campbell's Arrest/Detention Probable Cause Affidavit, he cites "stalking 21-5427" rather than harassment § 21-6206, the offense for which Plaintiff was charged. However, the standard for probable cause is reasonable belief that "the arrestee has committed or is committing an offense." *Olsen*, 312 F.3d at 1312 (10th Cir. 2002). Given that probable cause existed as to the charged crime, this Court's analysis does not change.

[57] *Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016).

[58] *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Defendants argue that there is no evidence that Chief Campbell violated Plaintiff's Fourth Amendment right to be free from malicious prosecution because there was probable cause to prosecute her, Chief Campbell did not cause Plaintiff to be prosecuted, and there was no malice.

As discussed above, the undisputed facts demonstrate Chief Campbell had probable cause as to a violation of K.S.A. § 21-6206(a)(1)(C); Plaintiff, therefore, cannot satisfy the third element of her claim. Next, Plaintiff has not shown that Chief Campbell caused Plaintiff to be prosecuted. Notably, "caused" does not require that it was the Defendant who actually filed the charges at issue.[59] There must be some evidence presented, however, that it was Chief Campbell's wrongful actions that caused the prosecutor to charge, such as when a Defendant "prevaricates and distorts evidence to convince the prosecuting authorities to press charges."[60] Here, there is no evidence that Chief Campbell distorted any evidence; rather, all facts asserted in Chief Campbell's Affidavit are supported by the undisputed facts in the record.

Finally, Plaintiff has not demonstrated Chief Campbell acted with malice. Malice may be "inferred if a defendant causes the prosecution without arguable probable cause."[61] As discussed above, the undisputed facts demonstrate Chief Campbell had probable cause that Plaintiff committed the charged offense. Thus, Plaintiff cannot satisfy the malice element of her malicious prosecution claim. Defendants are entitled to summary judgment on the malicious prosecution against Chief Campbell.

### 2. City of Valley Falls

The Tenth Circuit has articulated the following bases for municipal liability under § 1983:

---

[59] *See Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004).

[60] *Id.*

[61] *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014).

Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." Municipal liability may [] also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.[62]

To give rise to municipal liability, an informal practice or custom must be "so widespread as to have the force of law."[63] Further, the Tenth Circuit has held that the practice or custom must be "closely related to the violation of the plaintiff's federally protected right."[64]

Here, Plaintiff asserts four theories of liability against the City in Counts 32 to 42. Her first theory is that her false arrest by Chief Campbell was pursuant to an official policy, practice, or custom of the City. Second, Plaintiff contends that the City failed to investigate, discipline, supervise, or control Chief Campbell's unconstitutional conduct, and by doing so, the City ratified Chief Campbell's conduct. Third, Plaintiff alleges that the City, through the Governing Body, independently violated her First Amendment rights when it forwarded her complaint about Chief Campbell to the County Attorney. And fourth, Plaintiff alleges that the City, through the Governing Body, caused her to face malicious prosecution in January 2017.

When "a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* [a violation] is quite

---

[62] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

[63] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997) (citing *Monell v. Dep't Soc. Servs. of City of NY*, 436 U.S. 658 (1978)); *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (explaining that a "well-settled custom or practice" may be deemed an official policy or custom for § 1983 municipal-liability purposes).

[64] *Schneider*, 717 F.3d at 770.

beside the point."[65]  As discussed above, Plaintiff has not presented evidence that Chief

Campbell's actions constituted a constitutional violation.  Accordingly, to the extent Plaintiff's

claims concern the City's liability for Chief Campbell's actions pursuant to policy, practice, or

custom, as a policymaker, or through ratification, they necessarily fail.

### a. False Arrest Pursuant to City Policy

Plaintiff's first claim states that her false arrest was pursuant to an official policy,

practice, or custom of the city.  The Complaint contains the following allegation related to the

relevant practice or custom:

> 35. When defendant Campbell illegally caused, instigated or
> induced plaintiff to be seized and arrested on or about October 9,
> 2015 without probable cause, defendant Campbell acted pursuant
> to an expressly adopted official policy and/or a longstanding
> practice or custom of the defendant City official police department.

The allegation in paragraph 35 does not provide a basis for municipal liability because it

does not contain any evidence regarding a practice "so permanent and well settled as to

constitute a 'custom or usage' with the force of law."[66]  This conclusory allegation fails to

identify the nature of the custom or practice or how it was executed.  Therefore, the Court finds

that the custom or practice theory does not give rise to municipal liability.

### b. Failure to Investigate, Discipline, Supervise, or Control

Plaintiff's second claim contends that the city failed to investigate, discipline, supervise,

or control Chief Campbell's unconstitutional conduct, and by doing so, the City ratified Chief

Campbell's conduct.  The Complaint contains the following allegation related to the relevant

practice or custom:

---

[65] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

[66] *Brammer-Hoelter*, 602 F.3d at 1189.

37. Prior to, and/or after the City hired defendant Campbell as the City's Chief of Police, the City knew or has reason to know, and/or the City was aware and/or became aware that defendant Campbell engages in repeated constitutional violations, such as, arrest and seizure of citizens without probable cause, obtaining and dissemination of criminal record history of individuals without legitimate need for the information, that a criminal charges was brought against defendant Campbell for dissemination of criminal record of arrestees. However, the City refused and failed to discipline and/or punish defendant Campbell for such wrongful conduct.

38. Further, prior to the incident in this matter, defendant Campbell had engaged in numerous illegal and unlawful arrest and seizure of individual persons within the City, of which the City was aware of; but which the City refused to properly investigate, and the City refused to discipline, reprimand, or punish defendant Campbell for such wrongful conduct.

39. In addition, the City through numerous citizen complaints against defendant Campbell, knew or has reason to know, and/or the City was aware and/or became aware that defendant Campbell engages in repeated constitutional violations, such as, arrest and seizure of citizens without probable cause, calling arrested persons' landlords and/or employers disclosing the nature of the crimes been charged, and encouraging landlords to evict the arrested persons and in case of employers, urging them to terminate the arrestees.

40. However, the City refused and failed to properly investigate citizens' complaints against defendant Campbell, failed to discipline and/or punish defendant Campbell for such wrongful conduct; and the city adopts and ratifies defendant Campbell's illegitimate and unconstitutional conduct.

To establish municipal liability for failure to investigate under § 1983, Plaintiff must establish the existence of "deliberate indifference to or tacit approval of" a policy or custom.[67] The record contains no facts to support the allegation that the City received prior complaints against Chief Campbell or that the City had a policy or custom of failing to investigate any such

---

[67] *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

complaints. Indeed, with respect to the one complaint against Officer Campbell contained in the record, Plaintiff's own complaint against him, the City reviewed the complaint as well as relevant evidence to the complaint (Chief Campbell's body camera). Additionally, Plaintiff has alleged no facts or context to support the claim that the City had a policy or custom of failing to discipline, control, or supervise Chief Campbell, or that Chief Campbell violated individuals' constitutional rights on other occasions. To successfully oppose summary judgment, the nonmovant must bring forward "more than a mere scintilla of evidence" in support of her position.[68] A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[69] The record contains no evidence that the City had a policy or custom, written or oral, of failing to investigate, discipline, control, or supervise Chief Campbell, and Defendants are entitled to summary judgment on the claim.

### c.     First Amendment Violation by the City

Plaintiff's third claim alleges a violation of her First Amendment rights by the City's Governing Body when it voted to refer her complaint about Chief Campbell to the Jefferson County Attorney's office for prosecution. Whether a government actor is a final policymaker is a question of state law to be decided by the Court.[70] In making this determination, courts consider whether "(1) the official's discretionary decisions are 'constrained by general policies enacted by others;' (2) the decisions are reviewable by others; and (3) the decisions were within

---

[68] *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

[69] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[70] *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736–38 (1989)); *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1211 (10th Cir. 1998) (explaining that courts must determine whether officials are policymakers for the municipality "in a particular area, or on a particular issue") (citing *McMillian v. Monroe Cnty., Ala.*, 117 S. Ct. 1734, 1737 (1997)).

the official's authority."[71]  Assuming that the Governing Body is a policymaker for the City,

Plaintiff's claim fails because Plaintiff has not alleged facts to support a finding that a

constitutional violation occurred.

The First Amendment bars criminal prosecution where the proceeding is motivated by the

improper purpose of interfering with the person's constitutionally protected speech.[72]  To make a

First Amendment retaliation claim,

> [A] plaintiff must show that (1) he was engaged in constitutionally
> protected activity, (2) the government's actions caused him injury
> that would chill a person of ordinary firmness from continuing to
> engage in that activity, and (3) the government's actions were
> substantially motivated as a response to his constitutionally
> protected conduct.[73]

Upon a finding that the speech in question is constitutionally protected, the Plaintiff must

prove that the speech was a substantial or motivating factor in the challenged action.[74]  Notably,

reporting false information does not constitute protected speech under the First Amendment.[75]

"There is no constitutional value in false statements of fact."[76]  The undisputed facts show that

the Governing Body investigated and determined that Chief Campbell's Affidavit contained no

"false statements," as alleged by Plaintiff.  Even if the Court assumes that Plaintiff's formal

complaint constitutes constitutionally protected speech, Plaintiff cannot show that the Governing

Body's actions were substantially motivated as a response to constitutionally protected speech.

To demonstrate "substantial motivation" at the summary judgment stage, "some facts must

---

[71] *Dill*, 155 F.3d at 1211 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 448 (1995)).

[72] *See e.g., Bantam Books v. Sullivan*, 372 U.S. 58 (1963); *Dombrowski v. Pfister*, 380 U.S. 479 (1975).

[73] *Neilander v. Bd. of Cnty. Comm'rs. of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009).

[74] *Wulf v. City of Wichita*, 883 F.2d 842, 856–57 (1989).

[75] *In re Landrith*, 124 P.3d 467, 480 (2005) (the Kansas Supreme Court holding "the First Amendment provides no defense for . . . inflammatory and false accusations . . . .").

[76] *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 340 (1974).

demonstrate the Defendants acted on the basis of a culpable subjected state of mind."[77]  The

record is devoid of any facts indicating a culpable state of mind on the part of the Governing

Body.  Further, as discussed below, the undisputed facts demonstrate that the Governing Body

had probable cause to suspect a statute had been violated.  In the retaliatory prosecution context,

"a plaintiff . . . must allege and prove an absence of probable cause."[78]  The Court finds

Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### d.      Malicious Prosecution by the City

Finally, Plaintiff alleges that the City, through the Governing Body, caused her to face

malicious prosecution in January 2017.  Defendants argue that there is no evidence that the City

violated Plaintiff's Fourth Amendment right to be free from malicious prosecution because there

was probable cause to prosecute her, the original action did not terminate in her favor, and there

was no malice.  Once again assuming the Governing Body is a policymaker, the Court finds that

Plaintiff has not presented evidence that a constitutional violation occurred.

First, Plaintiff produced no evidence that probable cause did not exist for arrest and

prosecution under K.S.A. § 21-5904(a)(1)(B).  K.S.A. § 21-5904(a)(1)(B) reads:

> (a) Interference with law enforcement is:
> (1) Falsely reporting to a law enforcement officer, law enforcement
> agency or state investigative agency;
>             . . . .
> (B) That a law enforcement officer has committed a crime or
> committed misconduct in the performance of such officers' duties,
> knowing that such information is false and intending that the
> officer or agency shall act in reliance upon such information.

---

[77] *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014).

[78] *See McBeth v. Himes*, 598 F.3d 708, 718 (10th Cir. 2010) ("[I]n the retaliatory prosecution context, the requisite causal connection is 'between the retaliatory animus of one person and the action of another. To bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action,' . . . a plaintiff bringing a claim for retaliatory prosecution must allege and prove an absence of probable cause.") (quoting *Hartman v. Moore*, 547 U.S. 250, 263 (2006).

The City received a letter self-described as a formal complaint from Plaintiff against Campbell, alleging that Campbell made false statements in his Affidavit. After considering Plaintiff's complaint in Executive Session, and reviewing the body camera video concerning the interaction between Campbell and Plaintiff's husband, the Governing Body unanimously voted both that the complaint was unwarranted and to send the complaint to the County Attorney for possible prosecution under K.S.A. § 21-5904(a)(1)(B). The undisputed facts show that the Governing Body investigated and determined that Chief Campbell's Affidavit contained no false statements, and that Plaintiff's complaint was unwarranted. Plaintiff's complaint could reasonably be construed as "falsely reporting a law enforcement officer" for "misconduct" in violation of the statute. The undisputed facts indicate the Governing Body had probable cause to suspect Plaintiff violated K.S.A. § 21-5904(a)(1)(B).

Second, dismissal *without* prejudice by the newly elected County Attorney is not sufficient for termination "in favor of the Plaintiff." The merits of the second charge were never litigated; the charge was dismissed without prejudice. A dismissal "which had nothing to do with the merits of the case" are not favorable grounds for a Plaintiff, although they "certainty worked to [Plaintiff's] benefit."[79] The undisputed facts do not support a finding of a favorable judgment for Plaintiff.

Finally, Plaintiff failed to present any evidence of animus on the part of the Governing Body. Malice may be "inferred if a Defendant causes the prosecution without arguable probable cause."[80] As discussed above, the undisputed facts demonstrate that the Governing Body had probable cause to believe Plaintiff committed an offense; thus, Plaintiff cannot satisfy the malice

---

[79] *See Cordova v. City of Albuquerque,* 816 F.3d 645, 651 (10th Cir. 2016).

[80] *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014).

element of malicious prosecution.  Accordingly, the Court grants summary judgment for the City on Plaintiff's claim of malicious prosecution.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment Out of Time (Doc. 66) is **denied**.  The Clerk is directed to **strike** Plaintiff's August 20, 2018 response (Doc. 68).  Defendants' Motion for Summary Judgment (Doc. 60) is **granted**.

**IT IS SO ORDERED.**

Dated: October 18, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE